# United States District Court
## Southern District of Georgia
## Statesboro Division

Marquis B. West, Plaintiff pro se,
668170

vs.

Sam Olens, State Attorney General (Active)
Thurbert E. Baker, State Attorney General (Retired)
Kathleen Pacious, Deputy Attorney General (Active)
Devon Orland, Senior Assistant Attorney General (Active)
Andrew H. Magruder, Assistant Attorney General (Active)
Deana Simon Johnson, Attorney (Active)
James Barfield, Federal Magistrate Judge (Retired)
James E. Graham, Federal Magistrate Judge (Retired)
B. Avant Edenfield, Chief District Court Judge (Deceased)
Ed Carnes, Appeals Court Judge (Active)
Rosemary Barkett, Appeals Court Judge (Active)
Frank M. Hull, Appeals Court Judge (Active)
R. Lanier Anderson, Appeals Court Judge (Active)

Civil Action:

CV616-038

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2016 MAR 30 AM 9:38
CLERK [signature]
SO. DIST. OF GA.

| | |
|---|---|
| Susan H. Black, Appeals Court Judge (Active) | |
| Charles R. Wilson, Appeals Court Judge (Active) | |
| Stanley Marcus, Appeals Court Judge (Active) | |
| John Ley, Eleventh Circuit Court Clerk (Active) | |
| John Roberts, Chief Judge U.S. Supreme Court (Active) | |
| Antonin Scalia, Judge of U.S. Supreme Court ~~(Active)~~ (Deceased) | |
| Clarence Thomas, Judge of U.S. Supreme Court (Active) | |
| Anthony Kennedy, Judge of U.S. Supreme Court (Active) | |
| Mr. Alito, Judge of U.S. Supreme Court (Active) | |
| Mr. Breyer, Judge of U.S. Supreme Court (Active) | |
| Ruth Bader Ginsburg, Judge of U.S. Supreme Court (Active) | |
| Elaina Kagan, Judge of U.S. Supreme Court (Active) | |
| Sonya Sotomayor, Judge of U.S. Supreme Court (Active) | |
| Officers of the Court in challenged cases: | |
| West v. Warnock, 6:05-cv-00047 | |
| West v. Higgins, 6:06-cv-00083 | |
| West v. Olens, 6:13-cv-00107 | |
| West v. Magruder, 6:14-cv-00055 | |
| West v. Warnock, 05-159461 | |
| West v. Warnock, 06-124381 | |
| West v. Warnock, 07-14306-A | |

| | |
|---|---|
| West v. Higgins, 08-10738-B | |
| West v. Higgins, 08-11309-BB | |
| West v. Higgins, 08-12006-B | |
| West v. Higgins, 09-13909-B | |
| West v. Magruder, 14-14669 | |
| West v. Magruder, 14-9115 | |

# Independent Action Pursuant to Fed. R. Civ. P. 60(d)(3)

Comes now, Marquis B. West, Plaintiff pro se in the above styled action and files this independent action pursuant to Federal Rules of Civil Procedure 60(d)(3) in the Federal Southern District Court of Georgia, Statesboro Division:

## I. Jurisdiction

1. The Plaintiff moves in this court pursuant to Fed. R. Civ. P. 60(d)(3), which gives this court jurisdiction over actions challenging judgments obtained through fraud on the court; 28 USC § 1331, which gives jurisdiction over all Federal Constitutional and Statutory claims; 28 USC § 1343(a)(3), which gives jurisdiction over state officials acting under color of state law; and 28 USC § 1367, which gives supplemental jurisdiction over state law claims.

## II. Venue



2. The Plaintiff moves in this court pursuant to 28 USC § 1391(B)(2), as it is the proper

venue since the challenged cases, 6:05-cv-00047, 6:06-cv-00083, 6:13-cv-00107, and 6:14-cv-00055, were initiated in the Statesboro Division of the Federal Southern District Court of Georgia. Appeals numbers 05-15946I, 06-12438I, 07-14306-A, 08-10738-B, 08-10738-B, 08-11309-BB, 08-12006-B, 09-13909-B, and 14-14669 were all related to the initial cases and had the same assigned defense counsel as the relevant District Court cases. The 2013 motions filed in Appeal Number 08-11309-BB involved Officers of the Court Sam Olens, Thurbert E. Baker, Kathleen Pacious, Devon Orland, Andrew M Magruder, and Deana Simon Johnson, and were directly related to District Court cases 6:05-cv-00047 and 6:06-cv-00083. The Petition for Writ of Certiorari, 14-9115, was directly related to case 6:14-cv-00055 and Appeal Number 14-14669, which originated in the Statesboro Division of the Federal Southern District Court of Georgia.

## III. Parties

3. The Plaintiff, Marquis B. West, is, and at all times mentioned herein, an adult citizen of the United States and a resident of the State of Georgia, classified by the State as a Mental Health inmate and currently Mental Health Level III.

4. The Plaintiff, Marquis B. West, is, and was, confined in Georgia State Prison in Reidsville, Georgia at the filing of the challenged cases 6:05-cv-00047, 6:06-cv-00083, 6:13-cv-00107, and 6:14-cv-00055, in which he was the Plaintiff.

5. Officer of the Court Sam Olens was at all relevant times herein, the Attorney General of the State of Georgia and counsel given notice on 2013 motions filed on Appeal Number 08-11309-BB, and on Appeal Number 14-14669 and Petition for Writ of Certiorari 14-9115.

6. Officer of the Court Thurbert E. Baker was at all relevant times herein, Attorney General of the State of Georgia, and counsel for the defense in challenged cases 6:05-cv-00047, 6:06-cv-00083, and related Appeals 05-159461, 06-124381, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, and 09-13909-B.

7. Officer of the Court Kathleen Pacious was at all relevant times herein, Deputy Attorney General of the State of Georgia, and counsel for the defense on challenged cases 6:05-cv-00047, 6:06-cv-00083, related Appeals 05-159461, 06-124381, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, 09-13909-B, and attorney of notice on motions in 2013 on Appeal 08-11309-BB, Appeal 14-14669 and Petition for Writ of Certiorari 14-9115.

8. Officer of the Court Devon Orland was at all relevant times herein, Senior Assistant Attorney General of the State of Georgia, and counsel for the defense on challenged cases 6:05-cv-00047, 6:06-cv-00083, related Appeals 05-159461, 06-124381, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, 09-13909-B, and attorney put on notice of 2013 motions on Appeal 08-11309-BB and Petition for Writ of Certiorari 14-9115.

9. Officer of the Court Andrew M. Magruder was at all relevant times herein, Assistant Attorney General of the State of Georgia, and counsel for the defense on challenged cases [redacted] 6:05-cv-00047, 6:06-cv-00083, related Appeals 05-159461, 06-124381, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, 09-[redacted]13909-B, and attorney put on notice of 2013 motions in Appeal 08-11309-BB and Petition for Writ of Certiorari 14-9115.

10. Officer of the Court Deana Simon Johnson was at all relevant times herein, an Attorney in the State of Georgia, and counsel for the defense on challenged cases 6:05-cv-00047, 6:06-cv-00083, related Appeals 05-159461, 06-124381, 07-14306-A, 08-10738-B,

08-11309-BB, 08-12006-B, 09-13909-B, and attorney put on notice in 2013 motions in Appeal 08-11309-BB and Petition for Writ of Certiorari 14-9115.

11. Officer of the Court James Barfield was at all relevant times herein, Magistrate Judge of the Statesboro Division of the Federal Southern District Court of Georgia and the Magistrate Judge assigned to 6:05-cv-00047.

12. Officer of the Court James E. Graham was at all relevant times herein, Magistrate Judge of the Statesboro Division of the Federal Southern District Court of Georgia and the Magistrate Judge assigned to cases 6:06-cv-00083, 6:13-cv-00107, and 6:14-cv-00055.

13. Officer of the Court B. Avant Edenfield was at all relevant times herein, Chief Judge of the Statesboro Division of the Federal Southern District Court of Georgia and the Judge assigned to cases 6:05-cv-00047, 6:06-cv-00083, 6:13-cv-00107, and 6:14-cv-00055.

14. Officer of the Court Ed Carnes was at all relevant times herein, Circuit Court Judge for the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB.

15. Officer of the Court Rosemary Barkett was at all relevant times herein, Circuit Court Judge for the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB.

16. Officer of the Court Frank M. Hull was at all relevant times herein, Circuit Court Judge for the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB.

17. Officer of the Court R. Lanier Anderson was at all relevant times herein, Circuit Court Judge of the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB and the related motions in 2013.

18. Officer of the Court Susan H. Black was at all relevant times herein, Circuit Court Judge of the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB.

19. Officer of the Court Charles R. Wilson was at all relevant times herein, Circuit Court Judge of the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB.

20. Officer of the Court Stanley Marcus was at all relevant times herein, Circuit Court Judge of the Eleventh Circuit Court of Appeals and entered decisions on Appeal 08-11309-BB.

21. Officer of the Court John Ley was at all relevant times herein, Clerk of the Court for the Eleventh Circuit Court of Appeals and entered decisions on the 2013 motions on Appeal 08-11309-BB and on Appeal 14-14669.

22. Officer of the Court John Roberts was at all relevant times herein, Chief Justice of the United States Supreme Court and entered a decision on petition 14-9115.

23. Officer of the Court Antonin Scalia was at all relevant times herein, Justice of the United States Supreme Court and entered a decision on petition 14-9115.

24. Officer of the Court Clarence Thomas was at all relevant times herein, Justice of the United States Supreme Court and entered a decision on petition 14-9115.



25. Officer of the Court Anthony Kennedy was at all relevant times herein, Justice of the

United States Supreme Court and entered a decision on petition 14-9115.

26. Officer of the Court Mr. Alito was at all relevant times herein, a Justice of the United States Supreme Court and entered a decision on petition 14-9115.

27. Officer of the Court Stephen Breyer was at all relevant times herein, a Justice of the United States Supreme Court and entered a decision on petition 14-9115.

28. Officer of the Court Ruth Bader Ginsburg was at all relevant times herein, Justice of the United States Supreme Court and entered a decision on petition 14-9115.

29. Officer of the Court Elaina Kagan was at all relevant times herein, Justice of the United States Supreme Court and entered a decision on petition 14-9115.

30. Officer of the Court Sonya Sotomayor was at all relevant times herein, Justice of the United States Supreme Court and entered a decision on petition 14-9115.

## IV. History

31. On May 31, 2005 I filed civil suit West v. Warnock, 6:05-cv-00047 in the Statesboro Division of the Federal Southern District Court of Georgia against Dr. Judith Denton, Dr. Ramachandra Paiddi, Ph.D. Victoria McNatt, Mental Health (MH) Counselor Fleta Woods, MH Counselor Elaine Emanuel, MH Counselor Bryan Higgins, MH Counselor Geraldine Brown, and MH Counselor and MH Director Lisa Warnock. The suit stated that these people were deliberately indifferent in providing me with proper MH treatment due to the retaliatory lowering of my MH Level, which also violated the policies on lowering a MH inmates MH Level. This placed me in General Population where I had free access to razors

allowing me to harm myself by cutting my arm, neck, and lower abdomen 52 times. In 2004 I was housed at Georgia State Prison (GSP) as a Level III MH inmate assigned to a Supportive Living Unit (SLU), which provided a higher level of MH care and did not allow sharp objects of any kind inside the dormitory. In late 2004 fellow MH inmate Jeremy Lawson committed suicide in my dormitory and in early 2005 fellow MH inmate Logan Tillery committed suicide in my dormitory. In each instance the inmates had stated their suicidal intentions to the named parties in West v. Warnock who told both inmates to wait until their shift was over to kill themselves so that they would not have to stay late doing paperwork. Because the deaths were so close together, the Georgia Bureau of Investigations was called in after Logan Tillery killed himself to do an investigation. When I threatened to file grievances and explain to the GBI that the defendants in West v. Warnock had violated their duties by not following policy guidelines and by advising the two MH inmates to wait until night to kill themselves, I was immediately placed in the Acute Care Unit (ACU) and given forced medication. Upon release from the ACU my MH Level was immediately lowered from Level III to Level II, violating policy.

In West v. Warnock Attorney General Thurbert E. Baker, Deputy Attorney General Kathleen Pacious, and Assistant Attorney General Andrew M. Magruder represented Lisa Warnock, Fleta Woods, Elaine Emanuel, and Geraldine Brown. Attorney Deana Simon Johnson represented Dr. Ramachandra Paiddi, Dr. Judith Denton, Ph.D. Victoria McNatt, and Bryan Higgins who were contracted through Mental Health Management Correctional Services. (MHM Corr. Serv.). James Barfield was the Magistrate Judge assigned to the case and B. Avant Edenfield was the Chief Judge on the case. Unbeknownst to me at the time, MH Counselors Fleta Woods, Elaine Emanuel, Bryan Higgins, Geraldine Brown, and Lisa Warnock did not have the training, experience, education, or licensing required by State statutes, regulations, and policies to perform their assigned duties, even under supervision. Despite this, counsel for the defendants did the following:

A. Thurbert E. Baker, Kathleen Pacious, and Andrew M. Magruder as attorneys and Officers of the Court presented their clients to the District Court as expert witnesses, presenting affidavits from their clients to the court giving their professional opinion as qualified expert MH Counselors. These affidavits stated that each client was fully aware of the statutes, regulations, and policies related to their position. From these affidavits the named attorneys made multiple filings in defense of their clients violating several federal and state statutes, regulations, policies, and Constitutional mandates. These illegal filings were made possible in part because the named attorneys exploited discovery exceptions for prisoners, which, for security reasons, allows for certain information about prisons and opposing parties to be withheld. The licensing statutes and regulations that their clients had violated had been in place for over 9 years at the time I filed West v. Warnock. The duties outlined for MH Counselors by the Georgia Department of Corrections (GDC) Standard Operational Procedures (SOPs) coincided with the duties defined by State statute and regulation for professional counselors. The duties that the attorney's clients admitted to performing in their affidavits coincided with those outlined by GDC policy and the duties defined by State statute and regulation as being the province of a professional counselor. As it has long been held that: (1) the regulation of the medical professions are a part of a States inherent police powers; (2) medical expertise is established through a person meeting the States statutory and regulatory requirements; (3) knowing treatment being provided by unlicensed and unqualified personnel is deliberate indifference; (4) professional standards are set by State statutes and regulations, (5) and treatment that does not meet professional standards may constitute deliberate indifference, it was an active concealment of material evidence for the named attorneys to present their clients as expert witnesses. The named attorneys actively and continuously defended their clients throughout the case by way of this active concealment, which was a perpetration of fraud on the court at the following:

1. Doc. #21 Exhibit and Witness List 8/4/2005
2. Doc. #22 Answer to Complaint 8/10/2005
3. Doc. #30 Response in Opposition 9/2/2005
4. Doc. #63 Response to Motion 10/28/2005
5. Doc. #73 Response to Motion 11/21/2005
6. Doc. #74 Response in Opposition 11/21/2005
7. Doc. #75 Response in Opposition 11/21/2005
8. Doc. #94 Motion for Summary Judgment 1/10/2006
9. Doc. #95 Statement of Material Facts 1/10/2006
10. Doc. #96 Response in Opposition 1/10/2006
11. Doc. #97 Response to Motion 1/10/2006
12. Doc. #106 Response/Brief in Opposition 3/13/2006
13. Doc. #107 Supplement to Response 3/14/2006
14. Doc. #126 Response in Opposition 6/28/2007
15. Doc. #136 Response in Opposition 4/21/2009

In addition to these fraud based filings, the named attorneys actively oppose my request for appointment of counsel (see Doc #33 & #39), which would have resulted in the appointed attorney easily discovering their fraud of claiming their clients were licensed and qualified. (see Doc #42 Response to Motion 10/6/2005) Finally, the named attorneys misapplied precedent in their arguements, equating normal prison security classifications and housing assignments to those directly related to medical and MH care. The named attorneys made misleading arguements about their clients' work history and participation in treatment team meetings, and they knowingly used inadmissable evidence in their motions for summary judgment.

B. Deana Simon Johnson as an attorney and Officer of the Court represented Dr. Judith Denton, Dr. Ramachandra Paiddi, Ph.D. Victoria McNatt, and MH Counselor Bryan Higgins who were contracted with the state through MHM Corr. Serv's.

Her defense of her clients was necessarily based on the affidavits of the state represented defendants in the case and she also presented MH Counselor Bryan Higgins as a licensed and qualified expert when she was not. Her own clients' affidavits, in regards to the doctors, stated that: (1) they were all qualified experts; (2) that they were aware of the statutes, regulations, and policies related to their positions and professions; [redacted] (3) and that, neither they nor the other defendants, deviated from any of the requirements of their professions. MH Counselor Bryan Higgins did the same despite being unlicensed and unqualified. Deana Simon Johnson exploited the same discovery exceptions as her State counterparts previously named, actively concealing Bryan Higgins's lack of license and qualifications. This active concealment, in conjuction with the similar active concealment by her State counterparts, allowed Deana Simon Johnson to shield her doctor clients, named above, who were required by state statute, regulation, and policy to delegate duties only to persons qualified and certified to perform them; to report unqualified and uncertified persons providing MH treatment; to report doctors delegating professional duties to persons unqualified and uncertified; and to avoid violating the statutes, regulations, and policies pertaining to their duties, which includes making fraudulant statements in court. This active concealment of material evidence was continuously and actively defended and perpetrated upon the court, and against me, throughout the case by Deana Simon Johnson at the following points:

1. Doc #31 Answer to Complaint 9/13/2005
2. Doc #50 Brief in Opposition 10/14/2005
3. Doc #51 Brief in Opposition 10/14/2005
4. Doc #71 Response in Opposition 11/16/2005
5. Doc #72 Notice of Filing 11/16/2005
6. Doc #76 Motion for Summary Judgment 11/28/2005
7. Doc #77 Memorandum of Support 11/28/2005

8. Doc #78 Statement of Material Facts 11/28/2005
9. Doc #91 Response in Opposition 12/22/2005
10. Doc #106 Response/Brief in Opposition 3/13/2006
11. Doc #107 Supplement to Response 3/14/2006
12. Doc #135 Response in Opposition 4/20/2009

In addition to this, Deana Simon Johnson filed for sanctions against me, showing that she was fully aware of Fed. R. Civ. P. 11's mandates on a reasonable investigation of the veracity of her submissions and its prohibition against malicious filings:

1. Doc #102 Motion for Sanctions 2/23/2006

Finally, she actively fought against the court appointing me counsel, which would have invariably led to the appointed attorney discovering that her client, Bryan Higgins, was unlicensed and unqualified:

1. Doc #47 Response in Opposition 10/11/2005

Throughout the case, Deana Simon Johnson, as an Officer of the Court, misapplied case precedent in her arguements by equating normal prison security classifications and housing assignments to those directly related to the level of medical care and MH care an inmate receives. She purposely made misleading statements and arguements about her clients' actions, qualifications, license, and participation in the treatment team[redacted] meetings that resulted in my MH Level being lowered. Ms. Johnson also knowingly used inadmissable evidence in her motion for summary judgment.

C. Finally, [redacted] Magistrate Judge James Barfield and Chief Judge B. Avant Edenfield failed to perform their gatekeeping obligations of correctly determining the admissability of the proffered expert testimony, which became even more important because of the discovery exceptions they upheld against me as an inmate. They simply took defense counsels' word for it that their clients were all properly qualified and licensed for their positions:

1. Doc #23 Report & Recommendations 8/24/2005
2. Doc #111 Judgment 4/05/2006

The District Court Judges also refused to appoint me counsel even though I met all of the criteria for it:

1. Doc #48 Order Denying Motion 10/14/2005

These actions allowed the counsel for the defense to perpetrate fraud on the court by actively concealing the lack of qualifications and license on the part of the MH Counselor clients, resulting in a ruling of a difference of medical opinion. Later, when I discovered the active concealment on the part of the counsel for the defense, I pointed out the fact that the MH Counselors had no license:

1. Doc #134 Motion for Relief from Judgment 4/14/2009

I made the mistake of saying that the unqualified and unlicensed MH Counselors had perpetrated fraud on the court and the District Court Judges denied the motion saying that only officers of the court could perpetrate fraud on the court. While this is true, this act was an abuse of discretion on the part of the named judges as they failed to liberally construe my motion in accordance with pro se standards. My motion clearly showed fraud on the part of the defendants and it was timely submitted, giving the court ample justification to overturn the summary judgment for the defendants, as it showed that there had been a genuine issue of material facts with regards to my treatment from them meeting professional standards. When the defense counsel, previously named, for these defendants argued against my motion instead of correcting the affidavits of their MH Counselor clients now shown to be inadmissable as expert testimony, they perpetrated fraud on the court and showed that they had been aware of their clients' lack of license and qualifications from the beginning. Despite having a duty to correct this injustice, the named judges did nothing but stand by their original fraud based judgment.

All of these actions amounted to a violation of the Federal Rules of Civil Procedure and accepted case precedent on pro se construal, deliberate indifference, medical classifications and housing assignments creating a liberty interest, judicial duties, summary judgment, evidence verification, and expert witness testimony. They also ignored controlling state statutes, regulations, and policies which the Georgia Supreme Court has ruled on as creating a liberty interest for Georgia inmates.

32. Throughout West v. Warnock and the related appeals, 05-15946I, 06-12438I, and 07-14306-A, I was subjected to retaliation, which included unwarranted placement in Administrative Segregation, confiscation of legal materials, destruction of legal materials, destruction of personal property, unwarranted confiscation of personal property, retaliatory MH Level drops, retaliatory transfers, and retaliatory forced medication. When administration actually gave me a grievance, it was 'lost' or destroyed when I turned it in and the court ignored my pleadings on the matter.

A. Doc #3 Motion for Injunctive Relief 5/31/2005

B. Doc #25 Motion for Federal Protective Custody 8/23/2005

On May 15, 2006 the Georgia Advocacy Office sent a letter concerning my MH treatment to Warden Hugh Smith at GSP.

33. After the fraud based judgment was delivered in West v. Warnock and the Georgia Advocacy Office notification of May 15, 2006 concerning my MH treatment was ignored by GSP administration, I filed West v. Higgins, 6:06-cv-00083, in the Statesboro Division of the Southern United States District Court of Georgia. The suit was against MH Counselors Bryan Higgins, Jennifer Zak, Tamara Bennett, Kimberly Brauda, Virginia Scott, Joe Shyrock, Virginia Hogan, and Sarah Kitchens. It also named Dr. Scott Balogh, Dr. Jose Ariadi, Dr. Judith Denton, Warden Hugh Smith, Deputy Warden of Security Steve Roberts, and Deputy Warden of Care

and Treatment John Paul at GSP. The suit stated that the named defendants' retaliatory lowering of my MH Level was in violation of policy and was an act of deliberate indifference to my needed MH Care. This allowed me to be placed in population as a Level II MH inmate instead of being placed in an SLU as MH Level III inmates are housed. Unlike the SLU, which is kept free of all sharp objects, General Population had free access to razors allowing me to cut and attempt suicide at will. Attorney General Thurbert E. Baker, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, and Assistant Attorney General Andrew M. Magruder was counsel for defendants Joe Shyrock, Virginia Hogan, Sarah Kitchens, Hugh Smith, Steve Roberts, and John Paul. Attorney Deana Simon Johnson was counsel for defendants Bryan Higgins, Jennifer Zak, Tamara Bennett, Kimberly Brauda, Virginia Scott, Dr. Scott Balogh, Dr. Jose Ariada, and Dr. Judith Denton. James E. Graham was the Magistrate Judge assigned to the case and B. Avant Edenfield was Chief Judge on the case. Unbeknownst to me at the time, MH Counselors Bryan Higgins, Jennifer Zak, Kimberly Brauda, Virginia Scott, Joe Shyrock, Virginia Hogan, and Sarah Kitchens, along with the MH Director and Counselor Tamara Bennett were unlicensed and unqualified to perform the duties they were assigned, in violation of State statutes, regulations, and policies. Despite this, counsel for the defendants did the following:

A. Thurbert E. Baker, Kathleen Pacious, Devon Orland, and Andrew M. Magruder as Officers of the Court presented their clients Joe Shyrock, Virginia Hogan, and Sarah Kitchens to the court as expert witnesses, presenting affidavits which gave their professional opinions as MH Counselors. These affidavits stated that they were fully aware of the statutes, regulations, and policies related to their positions and that at no time did violate any of them in providing MH treatment to me. The named attorneys submitted multiple filings based upon these affidavits in defense of their clients, violating several federal and state statutes, regulations, policies, and Constitutional provisions. These violations were made possible, in

part, because the attorneys exploited discovery exceptions for prisoners. The licensing statutes that their clients had violated had been in effect for over 10 years at the time the suit was filed on September 5, 2006. The duties outlined for MH Counselors in the GDC coincided directly with the duties defined by State statute as pertaining to professional counseling. By their affidavits, the named attorneys clients in the case stated that they were all performing these statutorily defined duties. In the interrogatory responses, the named attorneys' clients stated that they were all licensed professionals. As it has long been held that the regulation of the medical professions are a part of a State's inherent police powers; medical expertise is established through state statutes and regulations; MH and medical treatment by unlicensed and unqualified people to prisoners is deliberate indifference; professional standards are established through State statutes, regulations, and policies; treatment that does not meet professional standards may constitute deliberate indifference; and it is axiomatic that answers to interrogatories be truthful, complete, and unevasive, it was an active concealment of the truth for counsel to present their clients as expert witnesses. With regards to their clients Hugh Smith, Steve Roberts, and John Paul, the named attorneys presented affidavits that stated their clients followed all relevant statutes, regulations, and policies at all times and never knew that I had issues with my MH treatment. These sworn statements were in direct contradiction to the mandates of the statutes, regulations, and policies that [redacted] the defendant's claimed to have abided by. The statutes, regulations, and policies showed that Hugh Smith, Steve Roberts, and John Paul were responsible for hiring and insuring that all counselors complied with the statutes, regulations, and policies related to their profession and its practice in the GDC, and that the three defendants were accountable for the actions of the MH Counselors. The statements also ignored letters to Warden Hugh Smith from the Georgia Advocacy Office stating that I had issues with my

MH treatment and were received by the Warden on May 15, 2006. These instances of fraud were actively and continuously perpetrated by the named attorneys against me and the court throughout the case at the following points:

1. Doc #24 Answer to Complaint 1/19/2007
2. Doc #33 Answer to Complaint 2/23/2007
3. Doc #34 Response to Motion 2/23/2007
4. Doc #38 Response to Motion 3/5/2007
5. Doc #39 Response to Motion 3/5/2007
6. Doc #53 Answer to Complaint 5/30/2007
7. Doc #60 Motion for Summary Judgment 6/8/2007
8. Doc #61 Statement of Material Facts 6/8/2007
9. Doc #135 Response in Opposition 1/28/2008
10. Doc #136 Response in Opposition 1/28/2008
11. Doc #137 Response in Opposition 1/28/2008
12. Doc #138 Response in Opposition 1/28/2008
13. Doc #140 Response to Affidavit 1/28/2008
14. Doc #175 Response to Motion 3/20/2008
15. Doc #211 Response in Opposition 4/21/2009
16. Doc #215 Response in Opposition 5/7/2009
17. Doc #222 Response in Opposition 7/13/2009

In addition to this, the attorneys misapplied precedent in their arguements, equating normal prison security classifications and housing assignments to those directly related to MH and medical care; they made purposely misleading arguements about their clients' performance of their duties and work schedule; they made knowingly false arguements about GDC exhaustion procedures for administrative remedies; they knowingly used inadmissable evidence in their motion for summary judgment; and they knowingly made false arguements that misapplied precedent

related to qualified immunity, res judicata, and respondeat superior.

B. Deana Simon Johnson, as an Officer of the Court, presented her clients Bryan Higgins, Jennifer Zak, Tamara Bennett, Kimberly Brauda, and Virginia Scott to the court as expert witnesses, presenting their affidavits in which her clients gave their professional opinions as professional MH Counselors. The affidavits stated that the clients were fully aware of the statutes, regulations, and policies related to their profession as MH Counselors and their duties in the GDC. They stated that at no time did they violate any of these statutes, regulations, and policies in providing me with MH treatment. Deana Simon Johnson submitted multiple filings in defense of her clients based on these affidavits, violating several federal and state statutes, regulations, policies, and Constitutional provisions. Again, these violations were made possible, in part, by Deana Simon Johnson exploiting the exceptions in the discovery rules related to prisoners acting pro se. The licensing statutes violated by he clients had been in effect for over ten years at the time West v. Higgins was filed. The duties of her MH Counselor clients outlined in GDC regulations and policies coincided with the statutorily defined duties of a professional counselor, and with the duties Ms. Johnson's clients admitted to performing in their affidavits.

In their answers to the interrogatories, Ms. Johnson's clients stated that they were all licensed professionals at the relevant times in the complaint. It has long been held that (1) the regulation of the medical professions is an inherent police power of the State; (2) medical expertise is established through State statutes and regulations; (3) professional standards are established through State statutes and regulations; (4) MH and medical treatment by unlicensed and unqualified people is deliberate indifference; (5) treatment that does not meet professional standards may constitute deliberate indifference; (6) and it is axiomatic that answers to interrogatories be truthful, complete, and unevasive. Because of these things, it was an active concealment of material fact for Deana Simon Johnson

to present her unlicensed and unqualified clients as expert witnesses. This active concealment of material evidence allowed Ms. Johnson to shield her clients, Dr. Scott Balogh, Dr. Jose Ariadi, and Dr. Judith Denton, through the reliance upon the authenticity of all of the MH Counselors' affidavits who were involved in the case. These doctors were required by State statute, regulation, and policy to delegate professional duties only to persons qualified and certified to perform such duties. They were required to report unqualified and uncertified persons providing MH treatment. They were required to report other doctors delegating professional duties to persons unqualified and uncertified. They were required to avoid violating the statutes, regulations, and policies pertaining to their professions. Finally, the named doctors were prohibited from making fraudulant statements concerning their professional standing and the care they provided, which includes statements made in court. This active concealment of material evidence was continuously and actively defended and perpetrated throughout the case by Deana Simon Johnson as an Officer of the Court at the following points:

1. Doc #17 Answer to Complaint 12/20/2006
2. Doc #32 Brief in Response 2/22/2007
3. Doc #36 Brief in Opposition 2/26/2007
4. Doc #37 Brief in Opposition 2/26/2007
5. Doc #46 Answer to Complaint 5/21/2007
6. Doc #47 Motion for Summary Judgment 5/23/2007
7. Doc #48 Brief in Support 5/23/2007
8. Doc #50 Statement of Material Facts 5/23/2007
9. Doc #51 Notice of Filing Original Discovery 5/23/2007
10. Doc #58 Brief in Opposition 6/7/2007
11. Doc #72 Motion for Summary Judgment 6/22/2007
12. Doc #74 Statement of Material Facts 6/22/2007

13. Doc #75 Brief in Support 6/22/2007
14. Doc #85 Brief in Opposition 8/3/2007
15. Doc #91 Motion for Summary Judgment 9/21/2007
16. Doc #92 Memorandum in Support 9/21/2007
17. Doc #93 Statement of Material Facts 9/21/2007
18. Doc #96 Answer to Complaint 10/9/2007
19. Doc #103 Motion for Summary Judgment 11/1/2007
20. Doc #104 Memorandum of Support 11/1/2007
21. Doc #115 Brief in Opposition 12/5/2007
22. Doc #116 Brief in Opposition 12/5/2007
23. Doc #121 Reply Brief in Support 12/26/2007
24. Doc #134 Response in Opposition 1/18/2008
25. Doc #174 Response in Opposition 3/10/2008
26. Doc #210 Response in Opposition 4/20/2009
27. Doc #213 Response to Response in Opposition 5/1/2009
28. Doc #221 Response in Opposition 6/30/2009

In addition to the above, Deana Simon Johnson misapplied precedent in her arguements, equating normal prison security classifications and housing assignments with those related directly to MH and medical care. She made purposely misleading about her clients. She made knowingly false arguements concerning GDC procedures for the proper exhaustion of administrative remedies. She knowingly used inadmissable evidence in her motions for summary judgments. Finally, she made false arguements concerning res judicata.

C. Finally, Magistrate Judge James Graham and Judge B. Avant Edenfield failed to perform their required gatekeeping functions concerning the determination of the admissability of expert witness testimony, which became of paramount importance due to the discovery exceptions for prisoners that were applied to me. The

judges took the word of defense counsel that the defenses' clients were licensed and qualified as experts in their fields in accordance with State statutes and regulations. See the following:

1. Doc #35 Order denying Preliminary Injunctions 2/26/2007
2. Doc #40 Order denying Declaratory Judgment 3/14/2007
3. Doc #81 Order denying Evidentiary Hearing 7/13/2007
4. Doc #95 Order of Dismissal 9/26/2007
5. Doc #117 Order denying Dismissal of Summary Judgment 12/6/2007
6. Doc #119 Report & Recommendations 12/21/2007
7. Doc #146 Order of Dismissal 1/29/2008
8. Doc #147 Order denying Sanctions 1/29/2008
9. Doc #156 Order Granting Summary Judgments 3/4/2008
10. Doc #157 Judgment in Favor of Defense 3/4/2008

Even after I filed a Motion for Writ of Quo Warranto (Doc #145, 1/29/2008 dismissal) challenging whether the MH Counselors were properly licensed and qualified for their positions, the named judges failed to perform their required duties of validating the relevance and reliability of the proferred expert witness testimony. Because of the nonfeasance on the part of the judges and the fraud perpetrated upon the court for the counsel for the defense, the judges ruled the case to be a differense of medical opinion. This was a violation of the mandates of the Federal Court Rules and accepted precedent on pro se construal, deliberate indifference, medical classification and housing, judicial duties, summary judgment, evidence verification, exhaustion of administrative remedies, and expert witness testimony. They also ignored controlling state law on liberty interests granted to state prisoners by the state. Finally, when I presented evidence to the District Court in May of 2009 showing that the MH Counselors in the case were unlicensed and unqualified at the times in question in West v. Higgins, the court once again violated precedent.

I made the error of stating that the MH Counselors had perpetrated fraud on the court by presenting themselves as experts when they were not and by lying about being licensed in the interrogatories. The District Court Judges denied my Motion for Relief from Judgment because the MH Counselors were not Officers of the Court. This is an obvious abuse of discretion as I was pro se and what I presented to the court was evidence of fraud on the part of the defendants and my motion timely as I had only discovered the fraud three months prior. Since this fraud was presented to the court by the defendants' attorneys, and those attorneys made no effort to correct their fraud based submissions, instead defending them, then that fraud became a fraud on the court and showed that counsel for the defense had acted in bad faith from the beginning. The named judges violated pro se standards and fraud on the court standards by ignoring this obvious conclusion.

34. Throughout my prosecution of West v. Higgins in the District Court I was subjected to retaliation from GDC officials, which included: unwarranted lockdowns; property confiscation; property destruction; legal mail destruction; legal property confiscation; legal property destruction; forced medication; MH Level drops; retaliatory transfers; retaliatory housing assignments; and destruction of grievances. My filings to the court regarding the retaliation were ignored.

A. Doc #3 Motion for Preliminary Injunction 9/5/2006
B. Doc #4 Motion for Injunctive and Declaratory Relief 9/5/2006
C. Doc #27 Motion for Preliminary Injunction 2/12/2007

35. After the fraud based judgment rendered by the District Court in West v. Higgins, I filed for an Appeal in the case with the Eleventh Circuit on March 26, 2008, and was granted leave to proceed in Appeal Number 08-11309-BB. Attorney General

Thurbert E. Baker, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, and Assistant Attorney General Andrew M. Magruder represented MH Counselors Virginia Hogan and Sarah Kitchens, and Wardens Hugh Smith, Steve Roberts, and John Paul. Attorney Deana Simon Johnson represented MH Counselors Bryan Higgins, Jennifer Zak, Tamara Bennett, Kimberly Brauda, and Virginia Scott, and Doctors Jose Ariadi, Judith Denton, and Scott Balogh. Circuit Judges Ed Carnes, Rosemary Barkett, Frank M. Hull, [redacted] R. Lanier Anderson, Susan H. Black, Charles R. Wilson, and Stanley Marcus all entered decisions on various motions in the Appeal with Circuit Judges Ed Carnes, Charles R. Wilson, and R. Lanier Anderson entering the final decision. The following occurred:

A. Thurbert E. Baker, Kathleen Pacious, Devon Orland, and Andrew M. Magruder continued to perpetrate fraud on the court by presenting the unqualified and unlicensed Sarah Kitchens and Virginia Hogan as qualified and licensed MH Counselors to the court who were qualified to give expert testimony when they were not so qualified. They consistently defended all of their arguements and actions in the District Court, which had been designed to actively conceal their clients' lack of qualification and license. This can be seen as follows:

1. On 1/9/2009 the counsel for the defense, named above, filed their Appellee Brief, which asserted the following:

a. The facts and legal arguements were not complex and were adequately presented in the records and briefs. (pg iv)

b. Deana Simon Johnson filed and won through similar summary judgment motions for her own clients. (pg. 3)

c. All of the defendants claimed that they were qualified MH experts and admitted to providing treatment to me. (pg. 5, fn. 2)

d. They stated that an inmates MH Level directly affected their housing assignment, their level of MH Care, and that an inmates MH Level was a determination made

by a doctor. (pg. 6-7)

e. They stated that, on the word of the unqualified and unlicensed Virginia Hogan, Dr. Bennett and Dr. Palmer both assigned me to the ACU (Acute Care Unit) and discontinued the seclusion over the phone without ever speaking to me. (pg 7-8) Both times the doctors ordered forced medication of Haldol shots.

f. They stated that Virginia Hogan worked in the ACU. (pg 7-8)

g. They stated that Virginia Hogan evaluated my mental condition on several occassions. (pg. 8)

h. They stated that my self inflicted cuts to my neck required sutures. (pg. 9)

i. They stated that Dr. Scott Balogh was informed of my self-injurious behavior and ordered that I be placed in the Crisis Stabilization Unit (CSU) for close observation. (pg. 9)

j. They stated that Virginia Hogan did not know if she was present during the treatment team meetings that lowered my MH Level. (pg 9)

k. They stated that the unlicensed and unqualified Virginia Hogan and Sarah Kitchens acted as Senior Mental Health Counselors for 2 and 3 years respectively. (pg 6 and pg 10)

l. They stated that Sarah Kitchens only treated me once by filling out a progress note when I cut my arm. (pg 10)

m. They stated that all other interactions with me by Sarah Kitchens were casual in nature. (pg. 10)

n. Sarah Kitchens, unlicensed and unqualified, stated that, based on her professional experience her few casual interactions with me, she urged the mental health treatment team on several occassions to lower my MH Level from III to II because I was intelligent, high functioning, grandiose, and was manipulating mentally weaker inmates. (pg 10-11)

o. They stated that everyone involved with my MH treatment complied with all of

the requirements of the GDC's SOP's with regards to my treatment. (pg. 11)

p. Virginia Hogan and Sarah Kitchens, unqualified and unlicensed, gave their professional opinions that at all times I received appropriate treatment and that all the treatment teams, even the ones they were not present at, followed all the proper policies, including reviewing my history, before dropping my MH Level. (pg11-12)

q. Hugh Smith, Steve Roberts, and John Paul stated that they did not remember receiving any written notification that I was having trouble with my treatment. (pg. 13)

r. They state that the District Court relied on Virginia Hogan and Sarah Kitchens' affidavits to support its conclusions. (pg. 18-19)

2. On 1/29/09 the named attorneys filed a response to my 1/20/09 motion for a Temporary Restraining Order where I showed that every MH Counselor named in West v. Warnock and West v. Higgins were unlicensed and unqualified at the times in question in both complaints, and I showed how this was a violation of state statutes. The named attorneys stated that the GDC was exempt from the law. On 2/13/09 I filed a Reply in Support pointing out that the GDC had lost its exemption on 1/1/96, 13 years prior. The named attorneys stated that the MH Counselors did not have to be licensed because the GDC said they did not.

3. After stating all of these things, the named attorneys made the following contradictory legal arguements.

a. I was trying to manipulate my housing environment through attempts at self harm. I had 52 documented cuts to my throat, arm, and lower abdomen, many of which require sutures, showing that I was doing more than attempting to harm my self. (pg. 15)

b. The attorneys stated that their was no evidence that their clients had been deliberately indifferent to my MH needs. (pg. 15) This was true only because

they concealed material evidence, e.g. lack of license and qualifications, and letters of notice to the Wardens.

c. They stated that the Wardens could not be held liable based on their positions as Wardens. (pg 15, para. 2) This directly contradicts the statutes defining their duties and degree of accountability.

d. They stated that their clients were entitled to qualified immunity. (pg. 16, para. 2) Qualified immunity only applies to officials performing discretionary functions and they did not have the authority to practice as MH Counselors without the proper license or qualifications, nor did the Wardens have the authority to allow them to do so. The named attorneys' clients also violated clearly established statutes, regulations, and policies, which they were made aware of by the Secretary of State and the Board of Corrections as is required by State Constitutional mandates and Statutes.

e. The named attorneys state that the District Court relied on the affidavits of Ms. Hogan, Ms. Kitchens, and Mr. Shyrock to determine that the treatment team had properly lowered my MH Level. (pg 18) As they were not present in the treatment team meeting, or could not remember if they were (pg 18, fn. 3), [redacted] their affidavits were not admissable for use in summary judgment as they had no personal knowledge of their claims.

f. The named attorneys invoked respondeat superior as a defense for the Wardens they represented. (pg 21) As the Wardens were accountable, by statute, regulation, and policy, for hiring properly qualified people for MH Counselor positions and for insuring that they properly performed their duties, this arguement is clearly erroneous.

g. The named attorneys invoked res judicata on behalf of their clients. (pg 23) This fails for the simple fact that the named attorneys perpetrated fraud on the court by concealing the fact that their MH Counselor clients in

West v. Warnock were unlicensed and unqualified, and the doctors were knowingly delegating professional duties to these unlicensed and unqualified people.

The arguements of the named attorneys throughout the appeal continued with the misapplications of precedent that they had used in West v. Warnock and in West v. Higgins. This included equating security classifications and normal housing assignments with those directly related to the level of MH Care a prisoner receives. They falsely presented their clients as qualified experts. They knowingly used false arguements related to proper exhaustion. Finally, they knowingly used inadmissable evidence in their motions for summary judgment, and they failed to correct these issues when I pointed them out.

B. Deana Simon Johnson, as an Officer of the Court, continued to perpetrate fraud on the court by presenting her clients Bryan Higgins, Jennifer Zak, Tamara Bennett, Kimberly Brauda, and Virginia Scott as licensed and qualified MH Counselors when they were not properly licensed or qualified. This active concealment once again allowed her to put the illegal actions of the doctors in a favorable light, gaining a summary judgment in favor of all of her clients. Her consistent defense of her fraudulant arguements from West v. Higgins can be seen at the following:

1. 9/26/2008 Response to Motion
2. 11/13/2008 Response to Motion
3. 1/7/2009 Appellee Brief
4. 2/3/2009 Response to Motion
5. 8/24/2009 Response to Temporary Restraining Order

Ms. Johnson's arguements continuously misapplied precedent related to security classification, housing assignments, proper exhaustion, and res judicata. She also continuously and knowingly used inadmissable evidence to gain favorable summary judgments.

C. Finally, despite the requirement that they review an Appeal de novo and review a District Courts application of controlling law, the Eleventh Circuit Judges validated the multitude

of errors made by the District Court and took it a step farther by ignoring the fact that fraud had been perpetrated on the District Court by the counsel for the defense when I pointed it out to them. They violated the mandates and accepted precedent on the Federal Court Rules, pro se construal, deliberate indifference, classification and housing related to MH and medical treatment, abuse of discretion, plain error, summary judgment, evidence verification, exhaustion of administrative remedies, expert witness testimony, controlling state law on inmate liberties, controlling state law on the MH practices, and fraud on the court. This can be seen at:

1. 6/26/2008 - Order dismissing the appeal and denying all motions, including the Writ of Quo Warranto challenging the MH Counselor defendants' claims of being qualified MH experts. - Circuit Judges Ed Carnes, Rosemary Barkett, and Frank M. Hull.
   a. The Writ of Quo Warranto, at the least, should have been construed as a request for a Daubert hearing and should have been enough impetus to have the judges verify the qualifications of the expert witnesses.
2. 08/19/2008 - Denial of Appointment of Counsel, Writ of Quo Warranto challenging the expertise of the MH Counselor defendants, and denial of a request for an oral hearing. - Circuit Judges R. Lanier Anderson, Susan H Black, Charles Wilson.
   a. As in the District Court, I met all the criteria for appointment of counsel: I was indigent. I had a serious mental illness. I was denied access to much of the information I needed. My case required investigation that I could not readily perform. My case had merit. The case had conflicting testimony. The case involved the interaction of state and federal laws, which is always complex.
   b. The Writ of Quo Warranto, in accordance with pro se construal, should have been regarded as a request for a Daubert Hearing, at the least. As a Writ of Quo was filed in the District Court on the same issue, the arguement could not be considered to be waived.

3. 10/21/2008 - Denial of the Preliminary Injunction. - Circuit Judges Ed Carnes and Rosemary Barkett.

4. 3/9/2009 - Denial of the Temporary Restraining Order in which I showed that the MH Counselor defendants were not licensed or qualified. - Circuit Judges Frank M. Hull and Stanley Marcus.

a. This showed fraud on the part of the defendants and a lack of admissability of their expert testimony since they were not experts. It also impeached most of the sworn statements of the defendants and called into question the reliability of the doctors' expert testimony. Defense counsels' failure to correct their misrepresentations to the court and their continued defense of those misrepresentations showed fraud on the court. I presented the evidence to the court as soon as I was able to discover it.

5. 9/21/2009 - Denial of the Judicial Notice of Adjudicated Facts concerning the unlicensed and unqualified nature of the MH Counselors in violation of State Law, Denial of the Motion for TRO, Motion to Expedite, Motion to File Supplemental Brief. Final Judgment. - Circuit Judges Ed Carnes, Charles R. Wilson, and R. Lanier Anderson. The opinion stated:

a. That I waived my right to argue that summary judgment should not be granted due to insufficient discovery. (pg. 2)

b. That I had not exhausted my administrative remedies against Bryan Higgins. (pg. 4)

c. That inmates have no liberty interest in prison classifications and housing assignments related to MH and medical care. (pg. 6)

d. That I showed no evidence of deliberate indifference on the part of the defense. (pg. 9)

e. That medical profiles ordered by a doctor are not a liberty interest. (pg 9, fn. 2)

f. That the District Court had made no errors. (pg. 9)

6. 11/4/2009 - Denial of Writ of Mandamus and Judicial Notice of Adjudicated

Facts. - Circuit Judges Ed Carnes, Charles R Wilson, and R. Lanier Anderson.

36. On 8/8/2009 I filed Judicial Complaint No. 110990097 against Judge B. Avant Edenfield for his failure to act on the blatant fraud perpetrated upon the court by the counsel for the defense and for his just as blatant bias against me. No action was ever taken by the judicial committee.

37. Throughout the time of Appeal No. 08-11309-BB I was subjected to retaliatory actions by GDC officials, which included unwarranted lockdowns, property confiscation, property destruction, obstruction of my legal mail, destruction of my legal mail, confiscation of my legal property, destruction of my legal property, forced medication, retaliatory MH Level changes, retaliatory transfers, and destruction of my grievances.

38. In 2010, after being held in strip cell lockdown for two months at GSP, I was transfered to Rutledge State Prison where I was informed that the transfer was due to my legal filings and that I would be made to regret it if I filed any grievances or lawsuits. While there I was placed on Administrative Segregation multiple times without cause.

39. On April 7, 2011, while at Valdosta State Prison, I signed a behavioral contract for no self injury or crisis placement. The contract was drawn up and signed by myself, Licensed Social Worker Justin Anderson, and Licensed Professional Counselor Lesa Shoe who was also the Mental Health Director. In the contract, Mr. Anderson and Ms. Shoe state that I am well known throughout the GDC for repeated high risk suicidal and self-injurious behavior. This was only a year and a half that the Federal Courts, based on the testimony of unlicensed and unqualified people posing as professionals, ruled that my suicidal and self-injurious behavior was an act.

40. In 2012, I was once again sent to GSP from Valdosta State Prison as a Level III MH inmate. Even though I was medium security at a medium security prison with no DR's (Disciplinary Reports) in effect, I was kept on Administrative Segregation until the middle of 2013, with none of the admin seg policy procedures being followed. Because of the fraud perpetrated upon the court by the named officers of the court in the challenged cases and appeals, nothing in the MH Program at GSP had been corrected. Deputy Warden John Paul was still over Care & Treatment and administratively responsible for the MH Department. The MH Department was still primarily staffed by unlicensed and unqualified MH Counselors as well. During this time licensed counselor Candice White quit due to the illegal and unethical conditions at GSP and, when I was finally released from admin seg to a MH Level III population SLU dormitory, I was placed in the care of unlicensed and unqualified MH Counselor, Ms. Varner.

41. On February 25, 2013 I sent a Judicial Notice of Adjudicated Facts to the United States Supreme Court listing how Attorney General Thurbert E. Baker, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General Andrew M. Magruder, and Attorney Deana Simon Johnson perpetrated fraud on the court in West v. Warnock, West v. Higgins, and the related appeals, with notice being sent to the attorneys. These filings were sent through the mail outside of the prison so that GSP officials would not know of the filings and retaliate against me. Despite this precaution, shortly after the items were received by the named attorneys, put on notice through certified mail, female Correctional Officers (CO's) began to harass my wife each weekend when she came to visit me. They constantly subjected her to excessive shakedowns entering and exiting visitation and they lied to her, telling her that I was cheating on her with them. I was on lockdown at the time in a dormitory with security cameras that can show this to be false, making these acts malicious in nature. Eventually, my wife tired of this and left me, moving to Florida and refusing to allow me to communicate with my kids

42. On May 8, 2013, after corresponding with the United States Supreme Court, I filed a motion for relief from judgment under Fed. R. Civ. P. 60(b)(3) and 60(d)(3) for a perpetration of fraud in West v. Warnock, West v. Higgins, and the related appeals by the Attorneys of Record for the defense in those cases. The motion was filed with the Eleventh Circuit Court of Appeals and notice was sent to Attorney General Sam Olens, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General Andrew M. Magruder, and Attorney Deana Simon Johnson. Once again the motion was sent to outside people before being sent to the court in an effort to keep GSP officials from learning of the filing and retaliating against me. The motion detailed how the MH Counselor clients in the cases had been unlicensed and unqualified at the time they were treating me in violation of state statutes, regulations, and policies. It explained how this was fraud. The motion explained how the involved doctors were attainted by the fraud. The motion explained how the Wardens involved were attainted by the fraud. The motion explained how the doctors and wardens had a duty to report the truth of this fraud. The motion explained how counsel for the defendants failed to abide by the laws and rules governing the presentation of witnesses and evidence to the court. The motion explained how the Court and counsel failed to abide by the laws and rules on how fraudulant evidence and testimony is to be dealt with when brought to their attention. The motion explained how the named attorneys had violated all of these principles and how such violations amounted to fraud on the court and gave case precedent on how fraud on the court is dealt with. The motion explained how fraud on the court is an injustice against the litigant, the public welfare, and the institutions of justice. Finally, the motion was accompanied by licensing information from the Georgia Licensing Board, as well as excerpts from the court record as evidence to support it. The notified attorneys made no response to the motion and Clerk of the Court John Ley determined that the motion was out of time, lacked specificity, and made no showing that an injustice had occurred.

43. On May 29, 2013, I sent a motion of reconsideration to the Eleventh Circuit, the Attorney General Sam Olens, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General [redacted] Andrew M. Magruder, and Attorney Deana Simon Johnson on the denied May 8, 2013 Motion for Relief from Judgment. Once again, I sent it to the court through people outside the prison in order to avoid retaliation by GDC officials at GSP. The motion explained to the court that fraud on the court is always considered an egregious injustice that must be corrected and that, because of this, there were no term limits concerning its correction. The motion also explained how the court had a duty to act on a fraud on the court and was accompanied by additional copies of the evidence. Once again, the notified attorneys made no response to the motion. Circuit Judge R. Lanier Anderson responded by having both motions unfiled from the court record, while keeping the submitted evidence, and barring me from filing anything else in the Eleventh Circuit related to the challenged cases. Nothing was ever said about the veracity or merit of the arguements and evidence in the motions. Despite my precautions with the mail, shortly before receiving Circuit Judge R. Lanier Anderson's response, MH Unit Manager Janet Brewton and her cousin Lt. Mobley at GSP entered my cell while I was outside the dormitory and broke my store bought mirror and dumped my store bought hygiene products in the toilet.

44. In late August 2013 I sent an 80 plus page Legal Notice with 240 plus case citations to Attorney General Sam Olens, GDC Commissioner Brian Owens, State Mental Health Director Dr. James De Groot, Warden Robert Toole, and Deputy Warden John Paul through certified mail. I outlined the retaliation I was suffering at the hands of GDC officials since 2004. I explained how this included a lack of proper MH treatment and the failure of the GDC to follow its own policies. I showed how, other than an activity therapy group where we played cards, GSP had no MH therapy groups or programs

and how they were still using unlicensed and unqualified MH Counselors. I detailed how this was all directly related to the fraud perpetrated on the federal courts in West v. Warnock, West v. Higgins, and the related appeals, and the failure of the State Attorney General's Office and involved attorneys and judges to correct the fraud. Finally, the Legal Notice detailed how MH Unit Manager Janet Brewton, Captain Termarsha Smith, Lt. Mobley, and CO Gibson were overstepping their authority through retaliatory actions and by making decisions concerning MH Treatment that they were not qualified to make. No response was made and none of the problems were corrected.

45. On September 3, 2013 Deputy Warden John Paul and MH Unit Manager Janet Brewton created a special rock detail for MH Level III inmates in MH Population while MH Director Madia West was not at work. They went through none of the proper procedures for doing this, ignoring all of the medical restrictions of the MH inmates, and it was not an emergency situation. The detail was located on the yard at GSP where M & L building had been torn down years before and was riddled with broken concrete, metal rebar, metal flashing, broken glass, screws, nails, asbestos, and other sharp objects that MH Level III inmates are prohibited by doctors orders from being around. To compound this, no tools or protective gear was provided and no water was provided even though their was no shade and the detail lasted over three hours in the middle of summer. This violated the medical profiles related to medication of most of the MH inmates, restricting them from being exposed to extreme heat. MH Unit Manager Janet Brewton stated to everyone that she did not care if the detail violated their medical profiles and that the detail was a response to complaints against her and the MH Department at GSP. I, and four other inmates, were locked down for failure to follow instructions for refusing to participate in the illegal detail, receiving DR's. On September 4, 2013 we sent Legal Notices to Attorney General Sam Olens, GDC Commissioner Brian Owens, State MH Director James De Groot, Warden Robert Toole, and Deputy Warden John Paul. All DR's but

mine were thrown out even though they all were the same and we all used the same defenses. No response was made to the Legal Notices.

46. On September 30, 2013, I filed a Criminal Civil Rights Violation Complaint pursuant to Federal Rules of Criminal Procedure 3 in the Statesboro Division of the Federal Southern District Court of Georgia against the illegal acts of the GDC and the State Attorney Generals Office of Georgia. The complaint was filed on behalf of all MH inmates at GSP with eight signatures from other MH inmates at GSP and was accompanied by evidence, including MH and medical records, of the multiple infractions listed within. A copy was also sent to the United States Department of Justice in Washington D.C. and others. Once again, it was mailed through outside sources to avoid alerting GSP officials of the filing.

47. On October 11, 2013 I was placed in Administrative Segregation without any reason being given and without any of the proper procedures being followed. I filed a grievance against the retaliatory nature of the lockdown on October 28, 2013 which was rejected as placement in admin seg is a nongrievable issue by GDC policy. I appealed on the grounds that I was grieving retaliatory action, not placement in admin seg. The appeal was rejected on the grounds that placement in admin seg is a nongrievable issue. I also sent a Legal Notice concerning the retaliation to Attorney General Sam Olens, GDC Commissioner Brian Owens, State MH Director Dr. James De Groot, and Warden Robert Toole concerning the retaliation by GDC officials.

48. On November 13, 2013 the GDC Office of Legal Services sent a response to the October 29, 2013 Legal Notice directing me to file a grievance on the issue. On November 21, 2013 I sent a Legal Notice in response to Attorney General Sam Olens, GDC Commissioner Brian Owens, Assistant Counsel of the GDC Office of Legal Services Bryan S. Wilson, and Warden Robert Toole that the purpose of the Legal Notice was to let officials know of

the breakdown in the grievance system and the retaliatory actions of GSP officials. No response was made, and my Criminal Civil Rights Complaint was returned by the court unfiled, without instructions, and without the evidence submitted with it.

49. On November 26, 2013 I refiled the Criminal Civil Rights Complaint, with new copies of the evidence, with the Statesboro Division of the Federal Southern District Court of Georgia. I used outside people to mail it to the courts with another copy to the United States Department of Justice in Washington D.C. and others, in an attempt to avoid alerting GSP officials of the filing. Despite this precaution, I was once again placed on admin seg a few days later. No reason was given and none of the proper procedures were followed. I stayed there until February 3, 2014 and, while in lockdown, I had a mental breakdown causing me to cut my throat and be placed on ACU.

50. On February 5, 2014, despite moving under clearly stated criminal procedure laws and rules, Judge James E. Graham converted the Criminal Civil Rights Complaint to a 42 USC §1983 Civil Rights Complaint. In the Report & Recommendations, which Judge B. Avant Edenfield later made the order of the court, Judge Graham stated that the Complaint should be dismissed for not being in the proper form and because I had three strikes against me under 28 USCS 1915(g). Two of the strikes used were the appeals for West v Warnock and West v Higgins, which were won through a perpetration of fraud on the court. The complaint was officially dismissed on March 17, 2014, Complaint No. 6:13-cv-00107

51. On June 3, 2014 I filed Civil Complaint 6:14-cv-00055 in the Statesboro Division of the Federal Southern District Court of Georgia with a TRO, IFP, and Brief in Support. Once again, I mailed it through people outside the prison to avoid retaliation from GSP officials. This was an independent action under Federal Rules of Civil Procedure 60(d)(3) asserting that West v. Warnock, West v. Higgins, and the related appeals were won by the State due

to Attorney General Thurbert E. Baker, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General Andrew M. Magruder, and Attorney Deana Simon Johnson perpetrating fraud on the courts by presenting their unlicensed and unqualified MH Counselor clients as licensed and qualified MH professionals. The complaint stated that the opinions of these unlicensed and unqualified people and the diagnoses, evaluations, and treatment plans of the doctors, which were based primarily on the opinions of the unlicensed and unqualified MH Counselors, were still being used in my treatment as a Level III MH inmate. It stated that I was not receiving the proper MH treatment for a MH Level III inmate and that I was taking powerful psychotropic medication with dangerous side effects. I also stated that I was continuously suffering from self-injurious desires and impulses, and suicidal ideations that were getting worse and placed me in imminent danger.

52. On July 1, 2014 Judge James E. Graham recommended that West v. Magruder, 6:14-cv-00055 be dismissed under 28 USC §1915(g) citing the appeals in West v. Warnock and West v. Higgins as two of the strikes. These were being directly challenged by the independent action and Judge Graham completely ignored my sworn statements of imminent danger.

53. On July 7, 2014, between 11:00-11:30 am in dormitory DW-3 at GSP, Warden Robert Toole, Deputy Warden of Administration Kilgore, Deputy Warden of Security Fowler, Major Termarsha Smith, Seargant Shoemaker, Seargant Worthar, and CO Inman took my GDC approved tennis shoes, which I had received in 2010. The shoes were in good repair and met policy standards. I had worn the shoes at GSP during inspections by the named officials and other administrators for two years with no issues. I have a medical profile requiring me to wear tennis shoes instead of the standard issue boots. I showed the SOP to Warden Robert Toole, which gave the guidelines for inmate shoes and showed him how my shoes complied with

the policy. I had received the SOP, which we are required to have access to, in the discovery package from a prior case. Warden Robert Toole still confiscated my shoes and the SOP saying he was not allowed to look at the SOPs without filing a Federal Freedom of Information Act and that inmates were not allowed to see them at all. It took three months for me to receive a property disposal form for my shoes and was forced to wear boots in violation of my medical profile until I finally got some tennis shoes from the laundry in [redacted] December 2015. Shortly after this, on December 31, 2015, Sgt. Davis and CO White of the CERT team confiscated my approved soft shoes and my soft shoe profile in the DW-4 dormitory for no reason and the State has yet to issue me replacements.

54. On July 21, 2015, thinking that Judge James E. Graham had misread my complaint, I filed an Objection to the Report & Recommendation of July 1, 2014 expounding upon my claims of imminent danger, deliberate indifference, fraud on the court, and how the named attorneys in the case were directly responsible for all of it by way of their concealing the GDC's criminal activities in the challenged cases. I also pointed out how it was legally dubious for the court to count cases as strikes to keep the cases from being directly challenged [redacted] by independent action for fraud on the court.

55. On August 20, 2014, Judge B. Avant Edenfield dismissed West v. Magruder, 6:14-cv-00055 under 28 USC §1915(g) ignoring every plain statement of fact in all of my sworn submissions with no contraverting evidence to justify his actions. Shortly after this I was locked down for possession of a knife. No DR was ever written and no knife was found on me, near me, in my property, in my room, or in my work area, and no knife was ever placed in evidence.



56. On September 15, 2014, I filed a Motion to Alter or Amend Judgment in West v.

Magruder with licensing evidence and evidence of the severity of my MH illnesses that I had not been able to submit earlier. On September 25, 2014 Judge B. Avant Edenfield denied the motion with no legitimate explanation.

57. On October 2, 2014, I filed a Notice of Appeal with the Eleventh Circuit in West v. Magruder with a request for instructions for filing IFP under the imminent danger standards. I sent the notice through outside sources to avoid retaliation.

58. On October 22, 2014, instead of sending the IFP information, Clerk of the Court John Ley denied me IFP status before I could file for it. He then stated that the appeal would be dismissed under 28 USC §1915(g) and for want of prosecution if I did not pay the filing fee. Once again the Court used the appeals in West v. Warnock and West v. Higgins, which were being directly challenged, as two of the three strikes.

59. In the first week of November 2014, CO Fowler wrote me a DR for masturbating in sight of her. The DR was not thrown out despite the following inconsistencies:

A. The officer admitted to MH Counselor Spencer that she had lied about the incident.

B. I was on detail in another building and out of sight of her when she said she saw me.

C. The DR Court refused to look at the security cameras in the dormitory which proved I was innocent.

D. I had multiple witnesses backing my story, including my MH Counselor, all of whom the DR Court refused to call on my behalf.

E. The Officer stated on multiple occassions that she had written the DR because of what administrators had said about me and not because of anything she had actually seen.

60. In January of 2015 I filed a petition for a Writ of Certiorari no. 14-9115 with the United States Supreme Court on Appeal No. 14-14669-B. As with all of my other filings in the case, I sent the petition through sources outside the prison in a futile attempt to avoid retaliation from GSP officials. Notice was also sent to Attorney General Sam Olens, Deputy Attorney General Kathleen Pacious, Assistant Attorney General Andrew M. Magruder, and Attorney Deana Simon Johnson.

61. On February 13, 2015 the CERT team at GSP gave me a drug test without following any of the procedures outlined in GDC SOP IIB01-0024. The drug test came back negative but they wrote me up anyway for THC while laughing about it. Sgt Davis of the CERT team approved the DR. On February 18, 2015 I submitted a grievance with an extensively detailed sworn statement of all of the procedures that the CERT team had violated and the retaliatory nature of their actions. On February 19, 2015, while eating supper in the A-North mess hall at GSP, CERT team members Sgt. Davis and CO Thurman came into the mess hall and began rushing the MH inmates from DW-3 and DW-4 dormitories, where I am housed, to get out of the mess hall. When they saw me Sgt. Davis said, "We can't say nothin' to West. He likes to write grievances. He can take as long as he wants to eat." When we left the mess hall they waited a few minutes, then entered DW-4 dormitory and searched me, ignoring everyone else. I filed grievance no. 191493 on the continued harassment but it was denied. The DR for the drug test was later thrown out.

62. In late July 2015 the Petition for Writ of Certiorari 14-9115 was denied, violating precedent on how fraud on the court is to be dealt with when properly presented to the court in detail and with supporting evidence. A copy of the Writ of Certiorari and the denial was sent to Columbia Law School and others.

63. On September 15, 2015 the CERT team came into DW-4 and began shaking down the dormitory around 9:30 AM after MH Level III inmates Jackson and Davidson messed up on the greeting for the inspection team. I was at work at the time and the CERT team went in my room and three other rooms to shake down after MH Unit Manager Termarsha Smith and Deputy Warden of Security Trevonsa Bobbit had the dormitory locked down. The CERT team left immediately after this and returned a little over an hour later right before I returned from my detail at the laundry under escort. They repeated their shakedown of the cells they had already done and were finishing with mine when I came in. As they were shaking down, they came out of my neighbors cell with a brand new syringe still in the pack, bragging about it and showing it to fellow CERT officers Sgt Davis and CO Wright. I was placed in my cell by Sgt Davis and CO Wright shortly after this and Sgt Davis left after telling me to go to my room and get it ready for inspection. The other CERT officers returned with a used drug test already showing positive for THC and amphetamines and tried to get my neighbor, whose room they found the syringe in, to urinate in the test cup. My neighbor refused and was never written a DR for refusing or for the syringe they found. Shortly thereafter, Sgt Davis returned as CO Wright was returning my Muslim body oil they had accidentally confiscated and Sgt Davis told me to pack up so that I could be moved. I asked Sgt. Davis where I was going and he said to lockdown, then pulled a foot long knife out of his pocket that he said he had found in my room. Since it was not my knife, I began to tell him so and demanded to speak with MH Unit Manager Termarsha Smith. I did not get to speak with MH Unit Manager Smith but was written a DR for possession of a knife. I was not moved to lockdown as there was no space, nor was I locked in my cell. I filed a grievance after DR Investigator Tammi Thomas told me that she would not check the security camera footage that was from the CERT officers body cameras or from the cameras in the dormitory. She also said that she would not talk to my witnesses. She told me she was an ex-member of the CERT team and that they had not broken

the chain of custody by placing the knife in their pocket and not showing it on the cameras or placing it in an evidence bag. On September 18, 2015 I filed a grievance with statements from my witnesses, noting that these actions violated OCGA 42-5-31, 42-2-11, 42-2-11(c), 42-2-11(g), 45-10-1(II), and 45-11-4(b)(1), and Ga. Admin. Codes §125-3-2-.06, §125-2-1-.01(c), §125-2-1-.01(d), and GDC SOP IIB02-0001. DR Investigator Tammi Thomas called me back the next week, redoing the investigation and getting statements from my witnesses. Despite this, on September 24, 2015, Lt. Johnson of the DR Court found me guilty, refusing to call my witnesses, read their statements, or look at the security camera footage. He said that he had known Sgt. Davis for a long time and all he needed to hear was the Seargant's statement. I immediately appealed the decision, adding a Legal Notice to Warden Stanley Williams and pointed out the Georgia Administrative Codes that required him to insure that DR hearings be fair and unbiased. On September 30, 2015, the same day Warden Williams received the appeal, he denied it saying that there were no procedural violations and that he would not overturn the decision. Throughout this time period, the CERT team was continuously harassing the MH inmates in DW-3 and DW-4 dormitories until the MH Counselor complained to the Warden about it. I appealed the Warden's decision, which was later denied because I did not follow unspecified appeal procedures. My September 18, 2015 grievance has yet to be answered as it keeps getting lost along with all of the statements.

64. On June 4, 2015 I received an article from Georgia Public Broadcasting titled "Mental Health in Georgia's Prisons." The article was written by Helena Cavendish de Moura and features State MH Director Dr. James De Groot. The article states the following:

A. One-in-six Georgia prisoners are MH.

B. The case load continues to grow.

C. The GDC has in the past been scrutinized for its poor treatment of the mentally-ill.

D. The Georgia Prison System is already burdened.

E. Mentally ill prisoners require highly specialized counselors, constant therapy, and medication.

F. Dr. De Groot states plainly that MH inmates can not cope with the heat during summer in non-airconditioned facilities and decompensate by hurting themselves, hurting others, and becoming really disorganized.

G. The Crisis Stabilization Unit (CSU) is where inmates in critical stress are taken.

H. Suicide attempts are not uncommon.

65. Currently I am a Level III MH inmate in GSP housed in an SLU that is not air conditioned even though me and the other MH inmates there have profiles against extreme heat exposure. I am diagnosed with Borderline Personality Disorder and Bipolar Disorder, both of which have self injury and suicide listed as complications of the disorder by the DSM. I am still considered by the GDC to be a high risk self-injurious and suicidal inmate. I am taking the maximum dosage of Effexor on a daily basis and I am taking Zyprexa on a daily basis. Both drugs are known to increase the risk of suicide in some patients and both require constant monitoring of patients with a history of suicide. I am constantly plagued by extreme boughts of nausea, extreme headaches that leave me incapacitated for hours at a time, vomitting, anxiety, sleeplessness, dizzieness, and joint pain. I am also having increasing difficulties with boughts of depression that last for days a time and I am constantly plagued with thoughts of cutting and thoughts of suicide that are getting worse. I am also constantly worried with fears of retaliation from prison officials, which seems to be directed by people outside the prison system since many of the instances of retaliation were related to legal filings that prison officials had no way of knowing about. This seems to exacerbate my anxiety and paranoia, which seems to lead to a worsening of my depression and thoughts of cutting and suicide in order to escape the torment. To complicate matters, the only MH treatment that I am receiving beyond medication is an activity therapy group where we play cards or bingo, or watch movies for a couple of hours at a time. A MH Counselor comes around four or five times a week but she has fifty plus MH Level

III inmates on her case load and can only provide meaningful treatment once every couple of weeks. Once every two months I see a physician's assistant in place of a psychiatrist whose only concern is whether or not I am taking my medication. There is infrequent and irregular labwork checks to monitor my medication and its effect on my health. There are absolutely no psychotherapeutic classes or treatment being offered at GSP and security constantly inteferes with our treatment. The prison is constantly short staffed with one or two officers being assigned to the four MH dormitories on the West Side of the prison. I am receiving no treatment for self injurious or suicidal behavior and the MH staff is still basing my treatment off of the opinions of the unlicensed and unqualified MH Counselors from the cases this independent action is challenging. All of this seems to be compounding my depression and suicidal impulses, and I feel that my mental illnesses are getting drastically worse. All of this is directly tied to the fraud perpetrated on the court in the challenged cases by the officers of the court herein named. If they had not covered up the fact that the GDC was hiring unlicensed and unqualified people to provide MH treatment to MH inmates, all of this would have come to light and been corrected 11 years ago. Instead, my suits and appeals were considered frivolous, severely impeding my ability to seek redress in the courts, as well as preventing me from receiving proper treatment as the GDC had no reason to correct their illegal actions after winning in court through the named attorneys use of fraud.

66. For more details on the legal merits of the independent action with regards to the applicable Federal and State Constitutional provisions, statutes, regulations, and policies, as well as more details of all parties related to the case and their actions, please see the Motion to Proceed In Forma Pauperis, Motion for Temporary Restraining Order (I), Motion for Temporary Restraining Order (II), Motion for Judicial Notice of Adjudicated Facts, Brief in Support of the Temporary Restraining Orders, and the

Brief in Support of the Judicial Notice of Adjudicated Facts, all of which are sworn to under penalty of perjury pursuant to 28 USC §1746 making them applicable as affidavits as well as their stated purposes.

## V. Statement of Claims

67. Officers of the Court, Attorney General Thurbert E. Baker, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General Andrew M. Magruder, and Attorney Deana Simon Johnson perpetrated fraud on the court in cases 6:05-cv-00047, 6:06-cv-00083, and related appeals 05-15946I, 06-12438I, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, and 09-13909-B, by actively concealing the unqualified and unlicensed nature of their MH Counselor clients; by presenting their MH Counselor clients as licensed and qualified MH professionals; by actively fighting against any actions taken by myself that threatened to expose their act of fraud on the court; by failing to correct their filings when I challenged, and presented proof, of the unlicensed and unqualified nature of their MH Counselor clients; and by winning on summary judgment using the known perjurous affidavits and interrogatory answers of their unlicensed and unqualified MH Counselor clients.

68. Officers of the Court, Attorney General Sam Olens, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General Andrew M. Magruder, and Attorney Deana Simon Johnson perpetrated fraud on the court in 2013 when they failed to correct their previous filings in the challenged cases when I filed my Motion for Relief from Judgment and Motion for Reconsideration with the Eleventh Circuit in Appeal No. 08-11309-BB pointing out that their MH Counselor clients in the case were unlicensed and unqualified. The attorneys were put on notice that the MH Counselor clients they had presented as experts

were not licensed or qualified to testify as such, nor were they legally allowed to provide me with MH treatment, creating a genuine issue of material fact and invalidating the summary judgments.

69. Officers of the Court, Attorney General Sam Olens, Deputy Attorney General Kathleen Pacious, Senior Assistant Attorney General Devon Orland, Assistant Attorney General Andrew M Magruder, and Attorney Deana Simon Johnson perpetrated a fraud on the court in the petition for Writ of Certiorari No. 14-9115 when they were put on notice that I was challenging their active defense and concealment of the unlicensed and unqualified nature of the MH Counselors in 6:05-cv-00047, 6:06-cv-00083, and related appeals no. 05-159461, 06-124381, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, and 09-13909-B through the use perjurous statements and manipulation of the Federal Court Rules, and did nothing to correct these crimes against myself, the court, and the public welfare.

70. Officers of the Court, Magistrate Judge James Barfield and Chief Judge B. Avant Edenfield allowed a perpetration of fraud on the court to be committed in case no. 6:05-cv-00047 when they failed to perform their judicial duty to insure that the MH Counselors in the case were qualified and licensed in accordance with State statute, regulation, and policy to give expert testimony in accordance with the judges' oath of office, Fed. R. Evid. 104(a), Fed. R. Civ. P. 26, Fed. R. Evid. 702, and the judicial canons. They compounded this error when they allowed the fraud on the court to go uncorrected when I pointed it out to them in my 2009 Motion for Relief from Judgment in the case and they failed to properly construe the motion in accordance with pro se rules.



71. Officers of the Court, Magistrate Judge James E. Graham and Chief Judge B.

Avant Edenfield allowed a perpetration of fraud on the court to be committed in case no. 6:06-cv-00083 when they failed to perform their judicial duty to insure that the MH Counselors in the case were licensed and qualified in accordance with State statute, regulation, and policy to give testimony as experts, in accordance with their judicial oath of office, Fed. R. Evid. 104(a) and 702, Fed. R. Civ. P. 26, and the judicial canon. They also failed to act, and properly construe, on my 2009 motion for relief from judgment in the case when I showed that the MH Counselors had not been licensed or qualified to give expert testimony or provide me with MH treatment. This failure on the part of the judges was exacerbated by their failure to properly apply case law on pro se construal, appointment of counsel, deliberate indifference, fraud on the court, and summary judgment.

72. Officers of the Court, Magistrate Judge James Graham and Chief Judge B. Avant Edenfield perpetrated fraud on the court in 6:13-cv-00107 when they subverted the Fed. R. Crim. P. by changing the complaint from a criminal complaint to a civil complaint against my express wishes. Besides litigating on my behalf against my wishes, they compounded their perpetration of fraud by using other cases in which fraud had been perpetrated against their court to bar the filing under the three strikes provision of 28 USC §1915 (g), and they blatantly interfered with the reporting of federal crimes and usurped the authority of the United States District Attorney's Office by deciding how the reported crimes should be prosecuted.

73. Officers of the Court, Magistrate Judge James E. Graham and Chief Judge B. Avant Edenfield perpetrated fraud on the court in 6:14-cv-00055 when they used the appeals in 6:05-cv-00047 and 6:06-cv-00083, all of which were challenged by the action as being procured through a fraud on the court, as frivolous strikes under 28 USC §1915 (g) to dismiss the case and block the challenge. They also stepped outside their judicial

duties by making a medical judgment of my MH claims based solely on their own beliefs. They violated pro se construal standards, imminent danger standards, evidentiary standards, and fraud on the court standards.

74. Officer of the Court, Clerk of the Court John Ley violated Fed. R. Civ. P. 60 standards by denying the 2013 Motion for Relief from Judgement in Appeal No. 08-11309-BB for lack of specificity and showing of injustice, which the motion went into at length, thereby protecting the fraud perpetrated on the court in the case.

75. Officer of the Court, Clerk of the Court John Ley perpetrated fraud on the court by protecting other frauds on the court when he dismissed Appeal No. 14-14669 under 28 USC §1915(g) using cases won through fraud on the court as strikes and without allowing me to file for IFP and state my imminent danger concerns.

76. Officers of the Court, Circuit Judges Ed Carnes, Rosemary Barkett, Frank M. Hull, R. Lanier Anderson, Susan H. Black, Charles R. Wilson, and Stanley Marcus allowed a fraud on the court to go uncorrected in Appeal Nos. 05-15946I, 06-12438I, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, and 09-13909-B by failing to properly review the District Court's decisions in 6:05-cv-00047 and 6:06-cv-00083 even after it was pointed out to them that the MH Counselors in the case were not licensed or qualified for their positions or to give the expert testimony they had that was used to gain summary judgment in their favor. They also affirmed all of the District Court's blatantly improper applications of controlling law in the cases and did not act on the fraud on the court as they are required to do.

77. Officer of the Court, Circuit Judge R. Lanier Anderson perpetrated fraud on the court in 2013 when he ordered my Motions for Relief from Judgment and for [redacted]

Reconsideration in Appeal No. 08-11309-BB to be unfiled from the court records and barred me from filing anything else related to the case in the Eleventh Circuit. This violated the mandates of Fed.R.Civ.P. 60 and all case precedent on fraud on the court.

78. Officers of the Court, Supreme Court Chief Justice John Roberts, Justice Antonin Scalia, Justice Ruth Bader Ginsburg, Justice Clarence Thomas, Justice Elaina Kagan, Justice Samuel Alito, Justice Sonya Sotomayor, Justice Steven Breyer, and Justice Anthony Kennedy violated their own precedent by ignoring a fraud on the court when it was properly presented to them in petition for Writ of Certiorari 14-9115. They made all of the same violations as their lower court counterparts by doing so.

# VI. Requested Relief

79. In accordance with accepted case precedent on relief in cases of fraud on the court and Fed.R.Civ.P. 60(d)(3), I request the following:

A. The judgments in cases 6:05-cv-00047, 6:06-cv-00083, 6:13-cv-00107, and 6:14-cv-00055 be overturned and that I be granted the requested relief in each case.

B. I request that the related appeals nos. 05-15946, 06-12438, 07-14306-A, 08-10738-B, 08-11309-BB, 08-12006-B, 09-13909-B, and 14-14669 be cleared from the record as they were all based on cases won through a perpetration of fraud on the court.

C. I request that the requested relief in my 2013 Motion for Relief from Judgment be awarded me as it was properly before the court, had the required specificity, and plainly stated the injustices, but was still illegally dealt with by the court.

## VII. Verification

80. Pursuant to 28 USC §1746, I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and hereby affix my signature below to verify this fact.

Executed this 27 Day, March 2016

#

MARQUIS B. WEST, PRO SE

West 668170
GSP
2164 Highway 147
Reidsville GA 30499

PRIORITY® MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com

Label 107, January 2008

UNITED STATES POSTAL SERVICE®
USPS TRACKING #
9114 9999 4431 4588 1357 93
Label 400 Jan. 2013
7690-16-000-7948

TO: U.S. District Court
Statesboro Division
P.O. Box 8286
Savannah GA 31412

Label 228, July 2013
FOR DOMESTIC AND INTERNATIONAL USE